IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISION, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ALLIED SERVICES LLC., d/b/a ) <br> ALLIED WASTE SERVICES OF THE ) <br> OZARKS/REPUBLIC SERVICES ) <br> OF THE OZARKS, ) <br> ) <br> Defendant. ) | Case No. 6:23-cv-03308-MDH |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 49). Defendant moves for summary judgment arguing there is no evidence to support either of the claims brought by Plaintiff. The motion has been briefed and is ripe for review. For the reasons set forth herein, the motion is denied.

## BACKGROUND

The EEOC has brought this case alleging Republic violated Title VII of the Civil Rights Act of 1964 when it failed to hire Jamie Mendoza, a woman, for a CDL garbage truck driver position based on her sex and failed to hire other qualified female applicants for CDL driver positions at the same facility because of their sex.

The following facts are undisputed, unless otherwise noted:

Allied Services, LLC d/b/a Allied Waste Services of the Ozarks/Republic Services of the Ozarks ("Republic") is a waste services company that provides collection, recycling, and disposal services to commercial, residential, and industrial customers in and around Springfield, Missouri.

1

Republic maintains an Equal Employment Opportunity Policy, however the parties dispute whether the policy has been enforced or ensures equal opportunity without regard to sex.

Republic's recruiting and hiring process is primarily managed by a centralized Talent Acquisition department that supports multiple Republic worksites. When a hiring manager at a Republic worksite identifies a hiring need, the Talent Acquisition department works with the hiring manager to develop and post a requisition for the open position. Applications for open requisitions are received through an electronic Applicant Tracking System (ATS). The ATS automatically reviews applications for certain basic job requirements and screens out those applicants who do not meet minimum qualifications.

Applications that meet minimum qualifications are reviewed by a Talent Acquisition Partner (also known as a recruiter), who conducts phone screens with the applicants and narrows the field to the most qualified applicants to be invited to participate in interviews at the worksite. Talent Acquisition Partners notify the on-site hiring manager of the applicants who have passed through the screening process and have been identified for on-site interviews, and assist with scheduling on-site interviews with the hiring manager.

In the case of driver positions in Springfield, Missouri, the hiring manager is typically the Operations Supervisor who has the opening to be filled. Typically, the Operations Supervisor conducts an initial interview using a Driver Interview Guide. As a result of the initial interview, the initial interviewer makes a decision whether to decline the candidate or to proceed with the interview process. If the interview process proceeds, the candidate is typically given a Realistic Job Preview (RJP), which consists of a ride along with a route driver for about an hour to observe the nature of the work performed. If the candidate remains interested in the position after the initial

interview and RJP, a second interview is typically conducted by the General Manager and/or Operations Manager.

Following the second interview, the General Manager, Operations Manager, and/or Operations Supervisor discuss and decide whether to extend an employment offer. For a period of time in 2020, during the COVID pandemic, the on-site interview processes were modified. Initial interviews were often conducted via telephone, and RJPs typically were not conducted. The local managers notify the Talent Acquisition Partner of any applicants they decide to hire, and the Talent Acquisition Partner communicates the offer to the applicant.

Jamie Mendoza, a female, obtained her Class B Commercial Driver License (CDL) in 2015. From May 2015 to January 2018, Mendoza worked as a school bus driver (a CDL position) in Everett, Washington. From August 2017 to March 2018, Mendoza worked as a pizza delivery driver (a non-CDL position) in Bothell, Washington. From March 2018 to November 2018, Mendoza worked as a dump truck driver (a CDL position) in Everett, Washington. From January 2019 to April 2020, Mendoza drove a passenger bus (a CDL position) in Everett, Washington.

In April 2020, Mendoza relocated from Washington to Springfield, Missouri. On April 20, 2020, Defendant posted an open job requisition for a Driver CDL position. Mendoza applied online on April 22, 2020, for the CDL garbage truck driver position with Republic in Springfield, Missouri, Requisition Number R-019803. There were a total of 52 applicants for Requisition Number R-019803. Mendoza was the only female applicant. After screening the applicants, the Talent Acquisition Partner passed through 10 applicants for on-site interviews, Mendoza and nine males: Shane Bryan, Daniel Chesney, Brad Gallia, Alfred Gray, Joshua Long, Michael Nelms, David Smith, Alex Williams, and Daniel Wilson. Shortly after Mendoza applied, Operations Manager Fred Winters called Mendoza to schedule a first interview.

Soon thereafter, Mendoza went to the Republic facility to interview with Winters. Winters inquired about Mendoza's job history and work experience, and Winters told her about the job. One of Defendant's employee testified "When you get someone to come in and they're qualified to do the job, in our industry, you want to make them an offer." It is undisputed Mendoza was qualified to do the job she applied for. Mendoza worked a previous job operating a dump truck. Defendant contends she did not meet the "preferred" qualification of two years of prior experience driving commercial trucks.

The Operation Manager, Winters, informed Mendoza he would like her to participate in a second interview with the General Manager. On May 20, 2020, Mendoza interviewed with Winters, General Manager Kurt Bodendorfer, and Area Manager of Operations Jerry Coleman. During the interview with Winters, Bodendorfer, and Coleman, the interviewers asked Mendoza about her work history and provided additional information about Republic and the driver position. Plaintiff alleges Bodendorfer told Mendoza there were no women's shower facilities, which would need to be built if she was offered and accepted the job. Defendant denies the statement was made and contends the facility had a unisex bathroom with a shower that locked from the inside, which was available for use by female drivers. Plaintiff alleges Bodendorfer was concerned female drivers would leave because they had before. Plaintiff alleges Bodendorfer attempted to discourage Mendoza from moving forward in the selection process by lamenting there were no women's showers, other female drivers who did not work out, and detailing the "cruddy parts" of the job. The interviewers described the job, including the "really cruddy parts of the job" and the "odor."

Following the interview, Republic sent Mendoza on a realistic job preview – a ride along in a Republic truck on a working route that allows applicants to observe the job duties for the position. Winters drove Mendoza to and from the ride along route in his personal pickup truck.

4

Defendant states it does not recall Mendoza participating in the realistic job preview. It is uncontroverted that if Republic is not interested in the candidate, it does not have the candidate participate in a realistic job preview.

Before leaving the facility on May 20, 2020, Winters advised Mendoza to speak with her husband and then let Winters know if she was still interested in the position. Thereafter, Mendoza called and texted Winters stating she was still interested in the position. Winters did not respond to Mendoza's communications. On May 28, 2020, Republic notified Mendoza it did not select her for the Driver CDL position. At the time, Republic did not employ any female drivers at the facility.

Ultimately, Republic decided to hire candidate Joshua Long. Long applied for the position on June 7, 2020 and was offered the position on June 12, 2020. The parties dispute Long's qualifications. Defendant states Long had been driving commercial trucks since 2016, whereas Mendoza had only driven commercial trucks for a period of eight months in 2018. In addition, Mendoza's experience included about 14 months as a food delivery driver and four years as a bus driver, which is not particularly relevant experience for operating Republic's commercial trucks. Plaintiff contends Long primarily drove a pickup truck, not a commercial truck, from September 2018 to May 2019 and that there is no "particularly relevant experience" beyond the minimum qualifications because Republic was eager to hire drivers.

In addition, Defendant contends Long had experience driving through small alleys. Plaintiff states there is no evidence of this experience but regardless Long was assigned to a country route rather than an "in-town" route. Finally, Defendant states Long had familiarity with the Springfield, Missouri, area since he had been driving commercial trucks in Springfield for over

four years and that Mendoza's experience was primarily in Washington state. Plaintiff states familiarity with Springfield was not a job requirement.

Winters testified that he made the final decision regarding which candidate to select for the position, with input from the others involved in the interview process. Winters testified that he cannot remember why Republic rejected Mendoza's application on May 28, 2020 when it had not contacted Long until June 16, 2020. He testified he could not have compared the candidates side-by-side if Republic rejected Mendoza before it knew Long existed.

Defendant states seven of the eight other unsuccessful male candidates who were interviewed for Requisition Number R-019803 had more relevant experience than Mendoza:

>a. Shane Bryan had operated large commercial trucks for over ten years.
>
>b. Daniel Chesney had operated semi-trucks and box trucks in the Springfield area for seven years.
>
>c. Brad Gallia had been driving semi-trucks and concrete trucks in the Springfield area for over five years.
>
>d. Alfred Gray had four years and nine months of commercial driving experience in the local area.
>
>e. Michael Nelms had seven years of commercial driving experience including semi-trucks and dump trucks.
>
>f. David Smith had driven concrete trucks for over six years.
>
>g. Alex Williams had driven large commercial vehicles for over five years, primarily in the Springfield area.

Plaintiff admits this but states these applicants also had more commercial driving experience than Long and that candidate Nelms had less dump truck experience than Mendoza.

None of the other candidates had driving experience operating manual or automated controls, as required for the position.

Plaintiff contends Mendoza was more qualified than Long for the position because: a) Mendoza held her CDL license approximately a year longer than Long and had prior job experience driving a dump truck – a large truck with a moveable apparatus, i.e., internal manual controls; b) Neither Long nor Mendoza had experience driving a front loader truck prior to applying to work for Republic; c) Long did not have experience operating a large truck with a moveable apparatus, he had not utilized his CDL class B license in prior employment as a pickup truck driver and laborer, and he drove a delivery truck from January 19, 2019 to June 2020.

Defendant contends Long had more CDL driving experience. Long applied for Requisition Number R-019803 on June 5, 2020. Thirty-seven of the 52 applicants, including six of the ten applicants who were interviewed, were notified they were not selected for the position before Long applied.

Plaintiff's expert Dr. Shaloka reviewed applicant data for the period June 2019 to May 2024. Dr. Shaloka determined that from June 2019 to May 2024 Republic hired seven females for CDL driver positions in Springfield. Dr. Shaloka estimated a hiring "shortfall" of six women over that five-year period, and concluded female applicants were statistically significantly less likely to be hired than their male counterparts.

Republic produced expert reports from Frederick Holt, Ph.D. Dr. Holt who determined that there was no statistically significant difference in the hiring rate of male and female CDL drivers in Springfield.

7

**STANDARD**

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id*. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.*, 638 F.3d 984, 993 (8th Cir. 2011).

**DISCUSSION**

**Failure to Hire Mendoza**

The parties agree that the Mendoza claim turns on whether Plaintiff can show that Defendant's non-discriminatory reason for failing to hire Mendoza was a pretext for sex discrimination. The EEOC can show pretext by showing Republic's explanation is "unworthy of credence . . . because it has no basis in fact" or "by persuading the court that a [prohibited] reason more likely motivated the employer." See *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (internal citations omitted). In other words, the EEOC must show "that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id*.

8

Defendant argues that Mendoza was not the most qualified candidate and that seven other interviewees were more qualified. Defendant also states that Long met preferred qualifications that Mendoza did not. However, for purposes of summary judgment the Court finds there are questions of fact regarding Plaintiff's claim that Mendoza was not hired based on her gender.

For example, the alleged comments made by Bodendorfer regarding the need to build a women's shower and the fact no other women had "worked out" could be seen as a reason Mendoza was not hired. Further, the fact Winters allegedly encouraged Mendoza to speak with her husband about the job could also be seen as gender motivated. Whether Winters told all applicants to discuss the job with their significant others is a factual issue for a jury to determine.

Finally, Defendant's position that it hired Long over Mendoza because he was more qualified also creates a factual issue for the jury. Plaintiff has established that Mendoza was rejected for the position before Long even applied. As such, Defendant's position that Long was more qualified and therefore was hired over Mendoza creates a genuine question of fact regarding the reason for Defendant's rejection of Mendoza.

The Court finds Plaintiff has shown genuine issues of material fact with regard to this claim to survive summary judgment.

**Pattern or Practice Discrimination Claim**

Title VII authorizes the EEOC to seek relief for aggrieved individuals in addition to the charging party when it determines an employer has engaged in a pattern or practice of discrimination. "[T]he EEOC need look no further than [42 U.S.C. §2000e-5] for its authority to bring suit in its own name for the purpose . . . of securing relief for a group of aggrieved individuals." *Gen. Tel. v. EEOC*, 446 U.S. 318, 324 (1980) (EEOC need not comply with Rule 23 class action requirements). When it does so, "the Government ultimately [has] to prove more than

the mere occurrence of isolated . . . discriminatory acts. It [has] to establish by a preponderance of the evidence that [unlawful] discrimination was the company's standard operating procedure." *Int'l Broth. of Teamster v. U.*S., 431 U.S. 324, 336 (1977). That evidence will often include statistical analyses of the relevant employment action. "[O]ur cases make it unmistakably clear that 'statistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue." *Id*. at 339 (citing *Mayor of Philadelphia v. Ed. Equality League*, 415 U.S. 605, 620 (1974)).

To establish a prima facie case of pattern or practice discrimination, Plaintiff must show that the discrimination was the company's standard operating procedure. *International Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 360 (1977). In *International Union, UAW v. Johnson Controls, Inc*., 499 U.S. 187 (1991), the defendant operated a battery manufacturing plant and the company implemented a policy to "protect" women employees from exposure to lead. The company stated that it was protecting women "capable of bearing children" from lead exposure and therefore the policy was not discriminatory. The Court held that "the bias in Johnson Controls is obvious. Fertile men, but not fertile women are given a choice as to whether they wish to risk their reproductive health for a particular job… [The employer's] fetal protection policy explicitly discriminates against women on the basis of their sex." *Id*. at 19.

Plaintiff relies on the report and statistical analysis of its expert, Dr. Shaloka, who concluded that female applicants are statistically significantly less likely to be hired than their male counterparts. Defendant has moved to exclude this expert and the Court, in a separate order, has denied that motion. However, the Court notes that Dr. Shaloka's statistical analysis alone may be insufficient to submit a pattern and practice claim to the jury. Any such determination will rely on what other evidence is submitted at trial.

Plaintiff also contends that there is more evidence than Dr. Shaloka's conclusions to support its claim. Plaintiff states that Mendoza offers anecdotal evidence that sex – not experience or other factors – caused the disparity in Defendant's hiring. Plaintiff claims the combination of statistical data, the low number of women hired as drivers, and anecdotal evidence – including Bodendorfer's repeated statements that female drivers had "not worked out," the lack of female shower facilities, and Bodendorfer's comments to Mendoza that hiring a female driver would require a change to those facilities establish that Republic denied employment opportunities to women based on sex. *Citing United States v. S. Dakota Dep't of Soc. Servs.,* 344 F. Supp. 3d 1055, 1075 (D.S.D. 2018).

Plaintiff's allegations put emphasis on the bad aspects of the job when interviewing a female and the insistence that Mendoza, a woman, consult with her husband regarding the job can be further evidence of discrimination. For purposes of summary judgment, the Court finds these factual disputes regarding the allegations, and the interpretation of any such allegations, are issues for the jury to determine. Plaintiff has established enough to survive summary judgment. However, the Court does not make any finding or determination as to whether Plaintiff may actually prevail on this claim.

## CONCLUSION

Wherefore, for the reasons set forth herein, Defendant's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

DATED: August 5, 2025                         /s/ Douglas Harpool     
                                                                **DOUGLAS HARPOOL**
                                                                **UNITED STATES DISTRICT JUDGE**